# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANONYMOUS | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| THE TJX COMPANIES, INC., and | ) | |
| HOMEGOODS, INC | ) | April 28, 2017 |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, ANONYMOUS, brings this action against his former employer, The TJX Companies, Inc. and HomeGoods, Inc.  Plaintiff seeks damages as a result of Defendant's violation of the Americans with Disabilities Act 42 U.S.C. 12101, *et seq.,* as amended by the Americans with Disabilities Amendments Act, Pub. L. No 11-0325 ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and various state laws.

## II.    JURISDICTION

1.    Jurisdiction of this Court is invoked under the provisions of 28 U.S.C §1331, federal question jurisdiction, as Plaintiff's claims arise, inter alia, under the laws of the United States, specifically the Title VII and the ADA.

2.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a) because they are so related to the federal

claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

## III.   VENUE

**3.**     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper within this District because a substantial part of the conduct underlying Plaintiff's claims occurred in Connecticut.

## IV.   PARTIES

4.     Plaintiff, ANONYMOUS, is a citizen of Connecticut and a resident of Hartford, Connecticut. ANONYMOUS is a gay man who kept his HIV positive status private.

5.     Defendant, The TJX Companies, Inc. ("TJX"), is an employer within the meaning of Title VII, the ADA, and the Connecticut Fair Employment Practices Act.

6.     Defendant TJX has a principal place of business located at 770 Cochituate Road, Framingham, Massachusetts.

7.     Defendant HomeGoods is a subsidiary of TJX, and operates a Distribution Center located at 1415 Blue Hills Avenue, Bloomfield, Connecticut (collectively "Defendants").

8.     Defendant TJX employs fifty (50) or more employees.

9.     At all relevant times, the Defendants conducted business in the State of Connecticut.

## V.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Plaintiff has exhausted administrative remedies.

11.     Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) on October 6, 2016, alleging disability discrimination, sex discrimination, and retaliation. The EEOC complaint was filed in a timely manner insofar as it was filed within 300 days of the date of plaintiff's adverse employment action.

12.     Plaintiff received a Notice of Dismissal and Right to Sue letter from the EEOC dated January 30, 2017. Plaintiff timely filed this complaint within 90 days of his receipt of that Right to Sue letter.

## VI.   FACTS

13.     Plaintiff began his employment with the HomeGoods, Inc., on August 5, 2014, as a General Warehouse Associate. His position entailed working in the Distribution Center.

14.     At all relevant times, Robert [last name unknown] was Plaintiff's supervisor.

15.     At all relevant times, I carried out his job duties and responsibilities competently, had no issues performing the essential responsibilities of his position and enjoyed his position with HomeGoods.

16.     Plaintiff was awarded the honor of being recognized as the Employee of the Month in November, 2015.

17.     At the time Plaintiff was employed by the Respondent, he entered into a relationship with Mr. E.  While those close to the Plaintiff know that he is gay, he

maintained his privacy at work and generally did not disclose his status as being in a same-sex relationship.

18.    In or about January, 2016, Mr. E. obtained a position as an employee in the Shipping Department of the Distribution Center.  Plaintiff and Mr. E maintained the confidentiality of their relationship, and generally did not even acknowledge each other at work.

19.    In or about March, 2016, Plaintiff and Mr. E. separated in a way that can be described as contentious.  During that period, Plaintiff began to have concerns about his interactions with Mr. E. because Mr. E. was heavily using drugs, had gotten arrested and was acting in an erratic manner.

20.    Upon information and belief, Mr. E. was unable to work during the time he was arrested.  Thereafter, he obtained a note from his doctor excusing him from work, at which time Plaintiff was aware that Mr. E. continued to use drugs heavily.  Plaintiff grew concerned that upon Mr. E's return, he would compromise Plaintiff's security and the security of others because of his drug use.

21.    At some time in March, 2016, Plaintiff contacted a 1-800 number that is advertised to report concerns, and he anonymously reported that Mr. E. had informed him that Mr. E. had faked his initial drug test when he was hired at HomeGoods.

22.    On April 8, 2016, Plaintiff saw Mr. E. at the beginning of his shift (approximately 3:30p.m.) on what he believed to be his first day returning to work

after his absence.  While Plaintiff and Mr. E. saw each other, they did not acknowledge each other's presence.

23.     After the shift ended, Mr. E. followed Plaintiff outside of the Distribution Center and threatened him.  Specifically, Mr. E. told Plaintiff that if he kept talking to people about him, he would "break [Plaintiff's] ass" and "break [Plaintiff's] car."  Mr. E. also stated "I know where you live," implying he would cause harm to Plaintiff at his home.  These threats occurred in the presence of other employees, whose names Plaintiff does not know.  Upon information and belief, the interaction would have been recorded on cameras that were recording the area.

24.     From that point until the present date, Mr. E. began to viciously stalk and harass Plaintiff, including but not limited to creating online accounts that purport to be Plaintiff, that make degrading and humiliating statements about Plaintiff, and disclosing Plaintiff's confidential medical information.

25.     On or about Sunday April 10, 2016, the tires of Plaintiff's vehicle were slashed.  Upon information and belief, Mr. E. slashed Plaintiff's tires in his continued efforts to bully, threaten, harass and retaliate against him.

26.     On April 11, 2016, at the beginning of Plaintiff's shift, he was called into a meeting with his immediate supervisor, a representative from Human Resources and two male individuals who were unknown to him at that time.

27.     During the meeting, these individuals inquired about private details of Plaintiff's relationship with a Mr. E. They informed Plaintiff that Mr. E. had claimed that (1) Plaintiff threatened to report that Mr. E. had faked his initial drug

test; (2) that Plaintiff posted naked pictures of Mr. E. on Facebook; and (3) that Plaintiff disclosed confidential medical information about Mr. E.

28.    In response, Plaintiff informed the individuals in the meeting that Mr. E. had indeed admitted to him that he faked his initial drug test, but that he did not post any inappropriate pictures of Mr. E. on Facebook. Plaintiff reported to them that Mr. E. had threatened him after work on April 8, 2011, and that other employees witnessed the threats.

29.    Plaintiff further stated that he did not and would not disclose Mr. E.'s medical information as HIV positive, particularly given that Plaintiff is also HIV positive.

30.    At that point, the individuals in the meeting left the room stating that they had to discuss this matter.  When they returned, Plaintiff's supervisor informed him that he was terminated.  When Plaintiff asked for the reason for his termination, Plaintiff's supervisor stated that he could not disclose that information.

31.    Despite Plaintiff's explanation of such events including detailing how he had been threatened and harassed, Plaintiff was terminated for Violation of the Code of Conduct Policy.

32.    Prior to Plaintiff's termination, he received no verbal or written warnings.

33.    Additionally, Plaintiff was never informed of his right to have a Union representative present during the meeting on April 11, 2016.

34.     After Plaintiff was terminated, he met with a Union representative who assisted him in filing a grievance with TJX. During this process, the Defendants refused to provide evidence (Facebook pictures) and other documents regarding Mr. E.s' claims against Plaintiff, or the Defendants' claims or investigation.

35.     Approximately two weeks later, Plaintiff was informed that he would not be restored to his previous position.  The representative stated to him: "They are not going to take you back.  They don't want someone like you working there."

36.     Plaintiff was soon thereafter informed by a friend that someone had posted an account and picture of Plaintiff on a gay dating site purporting to be him that stated: "35, 5'9", 140lb, 26W. Slim. Bald, Smooth, Latino.  Looking for 1-on-1 Sex, 3some/ Group Sex, Misc Festishes. Poz power bottom looking for asap love to get ma rotten ass brutally fucked till I bleed!! Hit me asap. fuck me till I bleed!! into partying and getting fisted!! Scene Drag, Out Yes, Smoke Yes, Drink Often, Drugs Often.  Cut, Bottom, Anything Goes . . . .  Prefer meeting at:  My Place.  Nasty whore."  Plaintiff am unsure when this was posted.

37.     Upon information and belief, this account was posted about Plaintiff by Mr. E. in his continued pattern of vicious and malicious retaliation, harassment and bullying against Plaintiff.  While this information was not discovered by Plaintiff until after his termination, it supports that there was a pattern in place by Mr. E., and that HomeGoods should and/or would have discovered his malicious and retaliatory motive had they conducted a proper investigation.

38.     By acknowledging that "They don't want someone like [Plaintiff] working for [their company]" Defendants relied upon another employee's statements regarding Plaintiff's personal and confidential medical information and sexual orientation in making the decision to terminate his employment.

39.     Plaintiff is, and at all times have been, qualified to perform the duties of his position at HomeGoods, and he did not violate any Policy at any time.

## COUNT ONE – Disability Discrimination in Violation of the ADA - 42 U.S.C. 12101 *et seq.*

40.     Paragraphs 1-39 are incorporated herein as if fully pled in this First Count.

41.     At all relevant times , Plaintiff has tested positive for Human Immunodeficiency Virus ("HIV") antibodies and is an individual with a disability as that term is defined in Section 3(2) of the ADA, 42 U.S.C. § 12102(2).

42.     The Defendants are "persons" within the meaning of §101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

43.     Defendants employ 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. §12111(5)(A).

44.     At all relevant times, Plaintiff was a qualified individual with a disability who was able to perform the essential functions of his position, with or without reasonable accommodation.

45.     Defendants terminated Plaintiff because of his HIV status.

46.     Plaintiff's termination occurred under circumstances giving rise to an inference of discriminatory intent insofar as he was terminated within moments of Plaintiff disclosing his status as HIV positive to Defendants, and the reason given is not worthy of belief.

47.     A further circumstance giving rise to an inference of retaliatory intent was Defendants' comment that they did not want someone "like him" working here.

48.     Defendants' termination of Plaintiff's employment on the basis of his HIV status is a discriminatory action prohibited by Section 102(a) of the ADA, 42 U.S.C. §12112(a).

49.     The Defendants' actions in discriminating against the Plaintiff on the basis of his disability were willful, and taken with malice and/or with reckless indifference to Plaintiff's rights under 42 U.S.C. § 12112.

50.     Defendants' termination of Plaintiff's employment on the basis of his HIV positive status has caused, continues to cause and will cause Plaintiff to suffer substantial damages for future pecuniary loss, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

51.     Pursuant to 42 U.S.C. § 1981a, Plaintiff is entitled to recover compensatory damages, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

52.     Pursuant to 42 U.S.C. § 1981a, Plaintiff is also entitled to recover punitive damages from Defendants' because they acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

53.     Pursuant to Section 505 of the ADA, 42 U.S.C. § 12205, Plaintiff is entitled to attorneys' fees, including litigation expenses and the costs of this action.

## COUNT TWO – Stereotypical Animus in Violation of Title VII

54.     Paragraphs 1-53 are incorporated herein as if fully pled in this Third Count.

55.     Plaintiff was a protected employee under Title VII insofar as Title VII prohibits discrimination on the basis of behavior considered to be stereotypically inappropriate for men.

56.     Plaintiff suffered harassment, abuse, and discrimination because of his status as a gay (HIV-positive) male when Defendants condoned and acquiesced to the threatening, retaliatory, harassing and bullying actions of Mr. E. against Plaintiff.  Specifically, Defendants credited Mr. E's statements while refusing to properly investigate the report as discrimination and workplace harassment and bullying by Mr. E. against Plaintiff.

57.     Defendants terminated Plaintiff because of he was a gay male.

58.     Plaintiff's termination occurred under circumstances giving rise to an inference of retaliatory intent insofar as he was terminated within moments of Plaintiff disclosing his sexual orientation to Defendants, and the reason given is not worthy of belief.

10

59.     A further circumstance giving rise to an inference of retaliatory intent was Defendants' comment, "We don't want someone like him working here."

60.     The Defendants' actions in discriminating against Plaintiff on the basis of his sexual orientation was willful or with reckless indifference to Plaintiff's rights under Title VII.

61.     Defendants' termination of Plaintiff's employment on the basis of his nonconformity with gender norms continues to cause and will cause Plaintiff to suffer substantial damages for future pecuniary loss, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT THREE – Negligent Infliction of Emotional Distress (NIED)

62.     Paragraphs 1-64 are incorporated herein as if fully pled in this Fifth Count.

63.     Plaintiff had been a high performing employee, having received employee of the month in November, 2015, up to the date of his termination.  He was loyal, performed his duties well and never received negative reviews.

64.     Without speaking with Plaintiff, Defendants spoke with Mr. E. about private and confidential matters involving Plaintiff's status as HIV positive, as well as other matters.  He was thereafter fired and later told Defendants did not want someone "like him" working for the company.

65.     Defendants were acquiesced to the retaliatory, harassing and bullying conduct that Mr. E. subjected Plaintiff to, and in so doing retaliated against,

harassed and discriminated against Plaintiff, disregarding the possibility that such actions would cause Plaintiff severe emotional distress.

66.    Defendants knew or should have known that its actions, including but not limited to terminating Plaintiff from his employment within moments of Plaintiff's disclosure that he is HIV positive and without conducting an investigation into Mr. E's misconduct after being informed of the same, created an unreasonable risk of causing the Plaintiff emotional distress.

67.    Plaintiff's distress was foreseeable considering the harassment, which was known and/or knowable by Sefendants, that he was exposed to by Mr. E. in the weeks prior to his termination.

68.    As a proximate result of Defendants' actions, Plaintiff has suffered severe emotional distress and mental suffering, which resulted in illness and bodily harm, including but not limited to sleeplessness, loss of appetite, headaches and the exacerbation of pre-existing medical conditions.

**COUNT IV – Negligent Supervision/Retention of an Unfit Employee**

69.    Paragraphs 1-71are incorporated herein as if fully pled in this Fifth Count.

70.    Defendants had a duty to provide Plaintiff with a safe workplace, free of discrimination and harassment.

71.    Defendants had actual and/or imputed knowledge of Mr. E.'s retaliatory, harassing and bullying action and statements towards Plaintiff at the

workplace, and his dishonest report against Plaintiff, as well as the undue risk of harm to which they were exposing Plaintiff.

72.    Despite the foregoing, Defendants failed to take adequate steps to determine the truth of Mr. E.'s statements, failed to adequately supervise Mr. E. and deliberately retained him instead of Plaintiff, emboldening Mr. E's actions against Plaintiff.

73.    As a proximate result of Defendants' failure to supervise and decision to retain Mr. E., Plaintiff has been injured and incurred damages.

74.    Defendants' actions were wanton and reckless, with malice and without reason or basis and were arbitrary, capricious and unfounded.

**WHEREFORE,** the Plaintiff respectfully requests this Court grant him the following relief:

1. Order the Defendants to make Plaintiff whole for all lost wages and benefits;

2. Award Plaintiff compensatory and punitive damages, including damages for pain and suffering;

3. Award Plaintiff reasonable attorney's fees and costs;

4. Award Plaintiff pre-judgment interest at the statutory rate;

5. Award Plaintiff any other legal or equitable relief that the Court deems appropriate.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF

By _____
Elizabeth Knight Adams, ct 26259
The Adams Law Firm, P.C.
41B New London Turnpike, Suite 7C
Glastonbury, CT  06033
Ph: (860)724-1300
Fax: (860)724-1302
Email: eadams@ekadamslaw.com

14

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was electronically delivered to the following counsel on this 28th day of April, 2017.

*As a Courtesy*
Joan Mitrou, Senior Attorney
The TJX Companies
770 Cochituate Road
Framingham, MA  01701

RESPECTFULLY SUBMITTED,
THE PLAINTIFF

By: _____
Elizabeth Knight Adams, ct 26259
The Adams Law Firm, P.C.

15